:given either to Dambmann or Drentell. In the absence of such· notice, either to the assured or the beneficiary, the defendant had no power to terminate the policy.

The judgment and order are right, and must be affirmed, with costs. All concur.

·(34 Misc. Rep. 1.)

### HALL v. LONG et al.

(Supreme Court, Special Term, New York County. February 7, 1901.)

:**1.** MECHANICS' LIENS—FORECLOSURE—BALANCE — SUBSTANTIAL PERFORMANCE.

Where, in performance of a contract for doing the ironwork on certain houses, there were inadvertent and unintentional omissions, which did not impair the structure as a whole, were remediable without doing material damage to other parts of the building, and could be compensated for by deductions from the contract price, the contractor is entitled to foreclosure of his lien for the balance due, less the reasonable expense of making the work literally answer the requirements of the contract, since substantial compliance with his contract is all that is required.

.**2.** BUILDING CONTRACT—PAYMENT—CERTIFICATE OF ARCHITECT—WAIVER.

Where a building contract required payment in installments on certificates of the architect, also provided that the owner might give the · contractor three days' notice in case of his failure to perform the contract or furnish proper materials, the owner by giving such notice, and attempting to complete the unfinished work at the contractor's expense, waives the certificate of the architect as a condition of payment.

· **3.** SAME—TERMINATING CONTRACT—NOTICE—RECOVERY.

The giving of the three-days notice by the owner, and attempting to complete the unfinished work, entitles the contractor to recover the difference between the last installment and the amount expended in completing the work.

·**4.** MECHANICS' LIENS—SUBCONTRACTOR—FORECLOSURE—JUDGMENT.

Where a subcontractor filed a lien for work done on certain houses, on foreclosure of the contractor's lien for the balance due him, the subcontractor is entitled to a judgment directing payment out of the moneys due the contractor under his lien.

:**5.** SAME—INDEPENDENT CONTRACTOR—SUBSTANTIAL COMPLIANCE — UNFINISHED WORK—DEDUCTION.

Where, at the time of refusal to proceed further for default in payment, a contract to lath and plaster houses was substantially performed, except the patching usually done after completion of the carpenter work, the contractor is entitled to foreclosure of·his lien for the balance due him, less the reasonable expense of doing the patching left undone, and completing certain details of work left incomplete.

· **6.** SAME.

Where a contractor had received notes from the owner of the property in payment of painting done on houses which he had turned over to his creditor, on which the creditor obtained judgment, on foreclosure of a lien for the reasonable value of the work the judgment must provide that out of the sum the judgments on the notes must be paid, so that the judgments be satisfied and the notes returned.

:**7.** SAME—NOTES—PAYMENT OF MATERIAL—RIGHT TO LIEN.

Where an owner gave his note to a contractor to be indorsed to material men, with which to obtain supplies to enable the contractor to complete the work, the fact that the material men credited the note to the contractor's supply account did not amount to payment, so as to preclude the material men from obtaining a mechanic's lien on the owner's building on his nonpayment of the note.

8. SAME—JUDGMENT—PARTIES.

Neither the lienors nor the owner are entitled to a personal judgment against the contractor, he not being a party to the suit to foreclose the company's lien, and no such judgment being asked in the pleadings.

9. SAME.

Where a contractor, furnishing the roofing and cornice work of certain houses, put the cornice up properly, but it was bent by other workmen employed on the building by the owner, which injury he corrected as far as able, and properly set the moldings over the doors, but they did not fit well because of defective mason work, he is entitled to a lien for the balance due under his contract, without deduction for such defects.

10. SAME—CONTRACT—MODIFICATION—WAIVER.

Where a contract for furnishing the roofing and cornices for certain houses required certain ornaments, for which those of the same value, but made by a different maker, were substituted under a modification of the contract, on foreclosure of a mechanic's lien therefor the owner cannot claim a deduction for failure to furnish the original ornaments, since he has waived that right.

11. SAME—JUDGMENT—SEVERAL LIENS.

Where, on foreclosure of a mechanic's lien, the other lienholders joined in the suit, only one decision and decree should be presented embracing all the liens, covering substantially all the issues decided, and declaring the priority of the different liens.

12. SAME—DISCHARGED ON BOND—FORECLOSURE—JUDGMENT AGAINST SURETY.

Where mechanics' liens were discharged on a bond given by a surety company, on foreclosure of the liens in a proceeding to which the company was a party, the judgment should be against the company for the amount of the liens.

Suit by John Hall against William S. Long and others. Judgment for plaintiff.

Samuel Bernstein, for plaintiff.

Walter J. McCoy, for defendant Union Granite Co.

M. J. Earley, for defendants Hallahan & Ahearn.

Joseph A. Farley, for defendant A. A. Murphy.

F. P. Hummel, for defendant F. Brandt.

Bennet & Silverman, for defendants J. Jones & Son Co.

Van Schaick, Norton & Quinby, for defendant Union Surety & Guaranty Co.

McADAM, J. The suit is in equity to foreclose certain mechanics' liens filed against five buildings on the north side of 116th street, 200 feet easterly from Eighth avenue, in the borough of Manhattan, belonging to the defendant Long. Plaintiff filed a lien for $4,013 alleged to be due to him from the owner, and the Union Granite Company, a subcontractor employed by the plaintiff, filed a lien for $675 to enforce the payment of that sum out of the moneys due from the owner to the plaintiff. Four independent contractors with the owner also filed liens and joined in the action to enforce them, to wit, Hallahan & Ahearn, Alban A. Murphy, Frederick Brandt, and the J. Jones & Son Company. Certain other liens filed by Messrs. Grimes, Mansfield & Person were settled and discharged of record.

First, as to the plaintiff's lien. The plaintiff's contract was to do the ironwork of the five houses for $16,000, payable in seven installments as the work progressed, upon the certificate of the

architect that the payments had been earned. The owner claims that the work done and material furnished were not of the quality required by the contract and the plans and specifications. It is true that in some unimportant details the work was not technically up to the requirements, but the old rule of strict performance is somewhat relaxed (Woodward v. Fuller, 80 N. Y. 312; Nolan v. Whitney, 88 N. Y. 648; Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271), and substantial performance only is required. "Substantial performance, as required by these and other cases, permits only such omissions or deviations from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price." Spence v. Ham, 27 App. Div. 379, 382, 50 N. Y. Supp. 960, 963. The contract was substantially performed within the rule laid down in the case cited, so far as the owner permitted performance thereof, and the plaintiff is entitled to recover the balance due him, less the reasonable expense of making the work literally answer the requirements of the contract. The owner had an architect and a superintendent in and about the buildings to protect his interests, and he was in and out of them occasionally himself. These persons saw what material was going into the work, and how it was being put in, yet there was no objection or fault found until after the plaintiff pressed for the last payment due to him. The owner waived the necessity of getting the architect's certificate, and he made the payments without any certificate. When the last payment was demanded the owner insisted for the first time upon a certificate, whereupon the plaintiff went to the architect, who refused to give the certificate because the plaintiff had filed a lien, and it might antagonize him with the owner. So that, whether the decision is placed on the ground of waiver of the certificate by the owner or wrongful refusal by the architect to give one, there is evidence enough to warrant a finding. Bowery Nat. Bank v. Mayor, etc., of City of New York, 63 N. Y. 336; Flaherty v. Miner, 123 N. Y. 382, 25 N. E. 418. Another feature of the case is presented by paragraph 5 of the contract between the plaintiff and the owner, which contains the usual clause allowing the owner to give three days' notice in case of failure by the contractor to furnish proper materials or perform the contract in any way, and permitting the owner to do so and to charge the cost to the contractor. The owner took advantage of this clause by serving the required notice, and attempting to complete the work which he claimed was unfinished. The certificate of the architect is waived when the owner gives the notice and proceeds to complete, as the object of the certificate is to inform the owner of the fact of completion. Weeks v. O'Brien, 141 N. Y. 199, 36 N. E. 185; Ogden v. Alexander, 140 N. Y. 356, 35 N. E. 638; Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017; Iron Co. v. Robinson, 33 Misc. Rep. 361, 68 N. Y. Supp. 577. Such a provision, acted on by the owner, entitles the contractor to recover the difference between the last installment

and the amount expended by the owner in completing the work. Weeks v. O'Brien, Ogden v. Alexander, Van Clief v. Van Vechten, Iron Co. v. Robinson, supra. The contract price was $16,000. The extra work furnished amounts to $468, aggregating $16,468; from which should be deducted payments, $12,400; allowance for deficiencies and work done by owner, $1,113,—leaving, as a balance due plaintiff, $2,955. The evidence given by the experts has been carefully weighed and considered according to the best judgment of the court upon the subject. Reeves v. Hyde, 14 N. Y. St. Rep. 689; Muller v. Ryan (City Ct. N. Y.) 2 N. Y. Supp. 736; Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028. That extra work was done is clear, for the owner's letters expressly call for certain extras.

Second, as to the lien of the Union Granite Company. The lien filed was for $675, but it was conceded on the trial that the granite company was entitled to $575 only, and judgment will be ordered accordingly in favor of the granite company against the plaintiff, with a direction that it be paid out of the moneys coming to the plaintiff under the lien filed by him.

Third, as to the lien filed by Hallahan & Ahearn, independent contractors. This lien was for the lathing and plastering work. The contract price was $14,000, payable in three installments, as the work progressed. The owner was dilatory in his payments, and the contractors refused to proceed on that account until Charles Heidenheimer, a surety procured by the owner, guarantied the payments provided by the contract. The contractors thereupon resumed work, and continued thereon until a further default was made; whereupon they declined to proceed. Johnson v. Tyng, 1 App. Div. 610, 37 N. Y. Supp. 516; Canal Co. v. Gordon, 6 Wall. 561, 18 L. Ed. 894. At the time the contractors finally ceased their work, the plastering they agreed to perform was substantially finished, except what is known as patching, which is generally performed after the carpenters have finished their work. The contractors did not receive a balance due of $3,000 under the contract. They are entitled to receive this sum after deducting $500, the reasonable expense of the patching left undone, and the further sum of $400, the reasonable expense of completing certain details of work left incomplete, and which would have been completed by the contractors if the payments agreed to be made by the owner had been promptly made, and he had not completed the work himself, leaving a net balance of $2,100, which the lienors are entitled to recover.

Fourth, as to the lien filed by Alban A. Murphy, an independent contractor. This lien was for the painting work. The contract price was $1,900. The owner paid on account in cash $260, and gave the contractor promissory notes aggregating $717.58, on account of which $150 was paid. These notes were transferred to creditors of the contractor, and the transferees recovered judgments on the notes, which judgments have not been paid. The contractor proceeded with his work until Hallahan & Ahearn filed their lien, whereupon he ceased to work, and filed a lien for the balance claimed by him, including the amount of the three notes. Murphy proved that the work done by him up to the time he stopped was reason-

ably worth $1,200, on which the owner is entitled to credit for $410, leaving $790 now due. The decree must provide that out of this sum the judgments on the outstanding notes made by the owner and transferred to creditors of the contractor must be paid, to the end that said judgments be satisfied and notes returned.

Fifth, as to the lien filed by the J. Jones & Son Company, who held a contract for electrical appliances with John C. Francis, contractor under the owner. The evidence shows that John C. Francis did not complete his contract with the owner, attributing his failure to impecuniosity and inability to obtain the required material to complete the work, whereupon the owner, on February 1, 1900, gave to Francis a note for $400, payable in 30 days, upon the understanding that he should give it to the Jones Company to make his credit with that company good. Francis owed the Jones Company more than $400 at the time he gave the note to said company, which thereupon credited the amount thereof on Francis' account. The note having been made for the accommodation of Francis on his promise to perform his contract, and without restriction as to its use further than that it should be given to the Jones Company for credit on his account, that company became a holder for value, and entitled to recover thereon from the maker. Schepp v. Carpenter, 51 N. Y. 602; Bank v. Penfield, 69 N. Y. 502. The note not having been paid, the broken promise did not operate as payment (Schmidt v. Livingston, 16 Misc. Rep. 554, 38 N. Y. Supp. 746); and, the material of the Jones Company having gone into the owner's house to aid in the construction thereof, the Jones Company became entitled, not only to the security of the note, but, for the amount thereof, to a lien which the statute affords to laborers and material men. Jones v. Moores, 67 Hun, 109, 22 N. Y. Supp. 53; Miller v. Smith, 20 App. Div. 507, 47 N. Y. Supp. 49. It cannot be that such an obligation is enforceable against the maker in the common-law branch of the court, and unenforceable in a foreclosure tried at the equity branch, where technicalities are, upon equitable principles, disregarded. The court therefore holds that the Jones Company has a valid lien against the premises to the extent of $400 and interest. The lienors are not entitled to personal judgment against Francis, because he is not a party to the action, nor is the owner entitled to any personal judgment against Francis for the same reason. No claim for such a personal judgment is made in the pleadings.

Sixth, as to lien filed by Frederick Brandt, an independent contractor. This lien was for the roofing and cornice work. The contract price was $1,100. The lienor received $700, and claims the balance of $400. The owner contends (1) that the cornice on the front of the buildings was bent, and that a crown molding, which would cost $200, was necessary to correct the defect; (2) that the moldings over the doors were defectively set, and that it would cost $9 to correct the error; (3) that certain ornaments which the plaintiff contracted to supply were not furnished, and that these on the five houses were worth $50. The lienor answered this claim by proving (1) that the cornice was properly put up by him, but was bent by other workmen employed on the building by the owner,

and that the lienor (though not bound to do so) corrected the injury as far as he could; (2) that the moldings over the doors were properly set, and that the alleged error was due to defective work by the mason; (3) that the particular ornaments said to have been omitted were not furnished because by a modification of the contract ornaments made by a different maker were substituted, the value being the same. This operated as a valid waiver by the owner. Close v. Clark (Com. Pl.) 9 N. Y. Supp. 538. The evidence so furnished by the lienor satisfactorily explains away the faults found by the owner. Some few articles called strainers were accidentally omitted, the highest value of which, according to the evidence offered by the defendant's expert, was $10, which sum will be deducted from the lienor's claim, leaving $390 due to him, with interest, for which he is entitled to judgment.

No technical objections have been urged against the form or sufficiency of the notices of lien, which will therefore be assumed to be in proper form and to have been filed in due time. There should be but one decision and decree presented embracing all the liens, covering substantially all the issues decided, and declaring the priority of the different liens. The liens having been discharged upon a bond given by the Union Surety & Guaranty Company, the judgments should be in accordance with Morton v. Tucker, 145 N. Y. 248, 40 N. E. 3, and Ringle v. Matthiessen, 10 App. Div. 274, 41 N. Y. Supp. 962, affirmed in 158 N. Y. 740, 53 N. E. 1131. The amount of costs and allowances may be left blank in the proposed decision and decree. That question will be adjusted on the settlement of the decree, which should be on three days' notice.